IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JEREMY ROLFES,**                    Case No. 1:16 CV 2408

      Petitioner,                    Judge Benita Y. Pearson

      v.                    Magistrate Judge James R. Knepp, II

**LASHANN EPPINGER, Warden,**

      Respondent.                    REPORT AND RECOMMENDATION

## INTRODUCTION

*Pro se* Petitioner Jeremy Rolfes ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent, Warden Lashann Eppinger ("Respondent"), filed an Answer (Doc. 6), and Petitioner filed a Reply (Doc. 7). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated October 6, 2016). For the reasons discussed below, the undersigned recommends the Petition be denied.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

The Ohio Eighth District Court of Appeals, Cuyahoga County, made the following findings

of fact:

> {¶ 2} Appellant was indicted on November 4, 2004, and charged with two counts
> of aggravated murder with felony murder and one- and three-year firearm
> specifications. Appellant was accused of murdering Gregory Brown. Appellant was
> assigned counsel, and the death penalty case proceeded through pretrial discovery
> and motions.

> {¶ 3} On June 14, 2005, appellant retracted his former not guilty pleas and entered
> a plea of guilty to an amended charge of aggravated murder, a violation of R.C.
> 2903.01, with a one-year firearm specification in Cuyahoga C.P. No. CR–04–
> 458493–A. At the same hearing, appellant also pled guilty to drug trafficking, a
> violation of R.C. 2925.03, in Cuyahoga C.P. No. CR–04–459857. The court
> immediately proceeded to sentence appellant on both cases to an aggregate sentence
> of 21 years to life in prison: 20–years–to–life imprisonment for aggravated murder
> to be served consecutive to one year for the firearm specification, and six months
> for drug trafficking to be served concurrent to the other sentence. The court's
> journal entry indicates that "postrelease control is a part of this prison sentence for
> the maximum time allowed for the above felony(s) under R.C. 2967.28." The court
> orally informed appellant that he was subject to a mandatory period of postrelease
> control for five years.

> {¶ 4} In 2015, appellant filed a motion seeking leave to file a delayed appeal, which
> this court granted. Appellant was appointed counsel, who filed an appellate brief
> assigning two errors for review:

>> I. [Appellant] entered a guilty plea without having been fully advised of all
>> of the potential consequences of his plea; in other words, the plea process
>> was not in substantial compliance with Criminal Rule 11(C).

>> II. [Appellant] was not properly advised of parole, a mistake by the trial
>> court that resulted in substantial prejudice

*State v. Rolfes*, 48 N.E.3d 1053, 1055 (Ohio Ct. App. 2015).

### PROCEDURAL HISTORY

State Court Conviction

In November 2004, the Cuyahoga County Grand Jury issued an indictment charging

Petitioner with two counts of aggravated murder, each with a felony murder specification in

violation of Ohio Revised Code § 2903.01; and two counts of aggravated robbery in violation of

2

Ohio Revised Code § 2911.01. *See* Ex. 2, Doc. 6-1, at 5-8. All four charges carried a three year firearm specification. (Ex. 3, Doc. 6-1, at 9-10). Petitioner pleaded not guilty to each charge. *Id.*

In June 2005, represented by counsel, Petitioner entered into a negotiated plea wherein the state deleted the felony murder specification in Count 1. (Ex. 4, Doc. 6-1, at 10). Additionally, the firearm specification in Count 1 was amended to a one-year specification. (Ex. 5, Doc 6-1, at 11). One aggravated murder (Count 2), and both aggravated robbery charges (Counts 3-4) were nolled. *Id.* The court accepted Petitioner's guilty plea as to Count 1, and sentenced him to twenty years to life, plus one additional year for the firearm specification to be served consecutively. *Id.* The court informed Petitioner he was subject to "post-release control . . . for the maximum time allowed for the above felony(s) under R.C. 2967.28." *Id.*

Direct Appeal

In January 2015, Petitioner filed a notice of appeal and a motion for leave to file a delayed appeal with the Eighth District Court of Appeals, Cuyahoga County. *See* Exs. 6-7, Doc. 6-1, at 12-20. The court granted leave to appeal and appointed counsel. (Ex. 8, Doc 6-1, at 53). In his brief, Petitioner raised the following assignments of error:

I [Petitioner] entered a guilty plea without having been fully advised of all of the potential consequences of his plea; in other words, the plea process was not in substantial compliance with Criminal Rule 11(c).

II [Petitioner] was not properly advised of parole, a mistake by the trial court that resulted in substantial prejudice.

(Ex. 9, Doc. 6-1, at 56). The state filed a brief and notice of additional authority in response. *See* Exs. 10-11, Doc 6-1, at 65-80. On November 12, 2015, the Court of Appeals affirmed the judgment of the trial court, but found the sentencing entry incorrectly set a term of post-release control, and remanded to the trial court to issue a *nunc pro tunc* entry to correct its advisement on post-release control and properly inform Petitioner. *See* Ex. 12, Doc. 6-1, at 82-94; *Rolfes*, 48 N.E.3d at 1054.

On November 20, 2015, the Cuyahoga County Court of Common Pleas issued a *nunc pro tunc* entry pursuant to the appellate court remand, correcting the advisements on Petitioner's post-release control. (Ex. 17, Doc. 6-1, at 119).

On November 25, 2015, Petitioner, *pro se*, filed an appeal to the Ohio Supreme Court, asserting a single proposition of law:

> I. The failure to advise a defendant in a criminal case of all potential consequences of his plea, including all of the maximum penalties involved removes the "knowing" element from the voluntariness of the plea and violates due process of law.

(Ex. 14, Doc. 6-1, at 97). The state waived a response. (Ex. 15, Doc. 6-1, at 117). On January 20, 2016, the Ohio Supreme Court declined jurisdiction pursuant to S. Ct. Prac. R. 7.08(B)(4). (Ex. 17, Doc. 6-1, at 118).

<u>Rule 26(B) Application to Reopen</u>

On November 25, 2015, Petitioner, *pro se*, filed an application to reopen his appeal pursuant to Ohio App. R. 26(B). (Ex. 18, Doc 6-1, at 121). In his application, Petitioner argued appellate counsel was ineffective for not raising three assignments of error:

> I     The failure to advise a defendant during a plea colloquy of the true nature of the charge, the maximum penalty and the requirements for parole constitutes a violation of due process of law and, thus, are not subject to harmless error analysis.

> II     The trial court violated due process and committed reversible error when it failed to advise appellant that he could or would be subjected to thousands of dollars in restitution.

> III     The failure to accept the plea of guilty on the part of the trial court, on the record, divests the trial court of subject matter jurisdiction to impose sentence, rendering the sentence and all subsequent proceedings void ab initio.

4

(Ex. 18, Doc. 6-1, at 124-27). The state filed a memorandum in opposition. (Ex. 19, Doc. 6-1, at 139-43). On May 10, 2016, the Court of Appeals denied Petitioner's application to reopen the appeal. (Ex. 20, Doc. 6-1, at 144-54); *State v. Rolfes*, 2016 WL 2756621 (Ohio Ct. App.).

On June 14, 2016, Petitioner, *pro se*, filed a notice of appeal with supporting memorandum to the Ohio Supreme Court. (Ex. 23, Doc. 6-1, at 155-77). In his memorandum in support of jurisdiction, Petitioner asserted four propositions of law:

I      Where appellate counsel in a criminal case overlooks significant and obvious issues of constitutional magnitude with a reasonable chance of success, such counsel is constitutionally ineffective under the sixth and fourteenth amendments.

II      The failure to advise a defendant in a criminal case during a plea colloquy of the true nature of the charge, the maximum penalty and the requirements for parole constitutes a due process violation and is not subject to harmless error analysis.

III      The failure to advise a defendant that he will be subjected to thousands of dollars in restitution renders a guilty plea invalid and unconstitutional.

IV      The failure to accept a guilty plea and render a finding of guilt in open court and on the record as required by Crim.R.11(B)(3) divests a trial court of subject matter jurisdiction to impose sentence, rendering the sentencing and all subsequent proceedings void ab initio.

*Id.* at 157. On August 31, 2016, the Ohio Supreme Court declined jurisdiction pursuant to S. Ct. Prac. R. 7.08(B)(4). (Ex. 24, Doc. 6-1, at 178).

## FEDERAL HABEAS CORPUS

Petitioner filed a *pro se* Petition with the United States District Court on September 25, 2016. (Doc. 1). Petitioner raises four grounds for relief:

**GROUND ONE:** The failure to advise Petitioner of all of the potential consequences of his plea as well as the maximum penalty involved and the true nature of the offense rendered the guilty plea in this case "unknowing" and violated due process of law.

**GROUND TWO:** Petitioner was deprived of the effective assistance of counsel in initial direct appeal, in violation of the Sixth and Fourteenth Amendments.

5

**GROUND THREE:** The failure to advise Petitioner that he could or would be subjected to thousands of dollars in financial penalties renders the plea unknowing and involuntary and violated due process of law.

**GROUND FOUR:** The failure to accept the guilty plea, on the record, divested the trial court of jurisdiction to impose sentence, in violation of due process of law.

(Doc. 1, at 5- 10).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102

6

(2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**DISCUSSION**

Respondent contends Petitioner's third and fourth grounds for relief are procedurally defaulted, and first and second grounds lack merit. Petitioner concedes Grounds Three and Four are defaulted, but contends he can overcome the default.  Further, Petitioner argues Grounds One and Two have merit.

First, the undersigned will discuss the default of Grounds Three and Four, and address whether Petitioner has shown cause and prejudice to overcome any default. Second, the undersigned will address the merits of Grounds One and Two.

<u>Procedural Default</u>

Respondent asserts Petitioner's third and fourth grounds for relief are procedurally defaulted due to his failure to raise them to all levels of the Ohio courts. Specifically, Petitioner failed to present these grounds to the Eighth District Court of Appeals on direct appeal. Petitioner concedes the default, but asserts he can show cause and prejudice to overcome it.

Procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *Anderson v. Harless,* 459 U.S. 4 (1982). In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional claims, on the record, to the trial court, the court of appeals, and the Supreme Court of Ohio on direct appeal. *Caver v. Straub,* 349 F.3d. 340, 346 (6th Cir. 2003) (quoting *O'Sullivan,* 526 U.S. at 845). This is

7

to "[alert] [the state court] to the fact that the prisoner[] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (internal quotation marks omitted) (citations omitted). In order to accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before habeas relief. *Whitings v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, "a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts." *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Further, the claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Additionally, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). A claim cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court. *Id*; *see also Williams v. Wolfenberger*, 513 F. App'x 466, 68 (6th Cir. 2013) ("To satisfy this requirement, the petitioner must argue his claim under the same legal theory that was presented to the state courts.").

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir.2004) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[ ] a constitutional claim with a 'colorable showing of factual innocence.' " *McCleskey v. Zant,* 499 U.S. 467, 495 (1991) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell,* 428 U.S. 465, 492-93 (1976)).

Here, as Petitioner concedes, the Ohio courts were denied the opportunity to pass upon the third and fourth grounds in the Petition due to his failure to raise them on direct appeal. In that direct appeal, Petitioner raised only two errors: (1) he entered his guilty plea without having been fully advised of all the potential consequences of his plea; and (2) he was not properly advised of parole, resulting in substantial prejudice. (Ex. 9, Doc. 6-1, at 56). Petitioner is therefore correct

that, because he failed to raise the third and fourth grounds, they are procedurally defaulted. *See Caver,* 349 F.3d. at 346 (quoting *O'Sullivan,* 526 U.S. at 845) (In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional claims, on the record, to the trial court, the court of appeals, and the Supreme Court of Ohio on direct appeal.) .

*Cause and Prejudice*

Petitioner asserts, however, that he can overcome his procedural default based on ineffective assistance of appellate counsel. A valid claim of ineffective assistance of appellate counsel may serve as cause to excuse a federal habeas Petitioner's procedural default. *See Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). Such an ineffective assistance claim can only serve as cause if it is also not defaulted. *See Goldberg v. Money*, 692 F.3d 534, 537 (6th Cir. 2012) (citing *Edwards v. Carpenter*, 529 U.S. 446, 456 (2000)).

Here, in his application to reopen, Petitioner argued appellate counsel was ineffective for failing to raise three issues on direct appeal: (1) the failure to advise Petitioner of the true nature of his charge, maximum penalty, and parole conditions constituted a violation of due process; (2) the trial court failed to advise Petitioner that he would be subject to restitution or fines in violation of due process; and (3) the failure to accept his guilty plea on the record divested the trial court of subject matter jurisdiction to impose a sentence. *See* Ex. 18, Doc. 6-1, at 124-27. After the appellate court denied his application (Ex. 20, Doc. 6-1, at 144-54), he filed a timely appeal to the Ohio Supreme Court (Ex. 23, Doc. 6-1, at 156-77), which was denied (Ex. 24, Doc. 6-1, at 178). Issues two and three raised in that application align with the issues Petitioner now raises in Grounds Three and Four. *See* Doc. 1, at 8-10. Therefore, the ineffective assistance of appellate counsel claims (based on the same facts presented here) were properly raised through the state courts and are not

defaulted. Such a non-defaulted ineffective assistance of counsel claim may serve as cause to overcome a default. *See Goldberg*, 692 F.3d at 537 (citing *Edwards*, 529 U.S. at 456).

In the denial of Petitioner's 26(B) application to reopen his appeal, the Ohio appellate court cited the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 688 (1984), and determined appellate counsel was not ineffective:

> {¶ 2} In order to establish a claim of ineffective assistance of appellate counsel, Rolfes is required to establish that the performance of his appellate counsel was deficient and the deficiency resulted in prejudice. *Strickland v. Washington,* 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990).
>
> {¶ 3} In *Strickland,* the United States Supreme Court held that a court's scrutiny of an attorney's work must be highly deferential. The court further stated that it is all too tempting for a defendant to second-guess his attorney after conviction and that it would be too easy for a court to conclude that a specific act or omission was deficient, especially when examining the matter in hindsight. Thus, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland.*
>
> {¶ 4} Rolfes raises three proposed assignments of error in support of his application for reopening.
>
> ***
>
> {¶ 8} Rolfes's second proposed assignment of error is that:
> The trial court violated due process and committed reversible error when it failed to advise appellant that he could or would be subjected to thousands of dollars in restitution.
>
> {¶ 9} Rolfes, through his second proposed assignment of error, argues that he was prejudiced by the failure of the trial court to inform him that he was subject to a fine or restitution. A review of the trial court's sentence, however, fails to establish that Rolfes was subjected to a fine or restitution. *See* sentencing journal entry journalized on June 14, 2005. Thus, Rolfes has failed to establish how he was prejudiced and that the outcome of his appeal would have been different had this court considered his second proposed assignment of error. It is also well settled that appellate counsel is not required to raise and argue assignments of error that are meritless. *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel cannot be considered ineffective for failing to raise every conceivable assignment of error on appeal. *Jones, supra; State v. Gumm,* 73 Ohio

St.3d 413, 1995–Ohio–24, 653 N.E.2d 253; *State v. Campbell,* 69 Ohio St.3d 38, 1994–Ohio–492, 630 N.E.2d 339.

{¶ 10} Rolfes's third proposed assignment of error is that:
The failure to accept the plea of guilty on the part of the trial court, on the record, divests the trial court of subject matter jurisdiction to impose sentence, rendering the sentence and all subsequent proceedings void ab initio.

{¶ 11} Rolfes, through his third proposed assignment of error, argues that the trial court did not accept his plea of guilty to the offense of aggravated murder, which rendered the sentence of the trial court void. A review of the transcript of the change of plea hearing demonstrates that Rolfes did enter a plea of guilty and that the trial court, on the record, accepted the plea of guilty.

\*\*\*

{¶ 12} The record of the change of plea hearing clearly demonstrates that the trial court accepted Rolfes's plea of guilty to the offense of aggravated robbery and the one-year firearm specification. In addition, the record clearly demonstrates that the trial court strictly complied with those provisions of Crim.R. 11(C) that relate to the waiver of constitutional rights. We further find that under the totality of the circumstances, Rolfes subjectively understood the implications of his plea of guilty and the rights waived. *State v. Veney,* 120 Ohio St.3d 176, 2008–Ohio–5200, 897 N.E.2d 621; *State v. Nero,* 56 Ohio St.3d 106, 564 N.E.2d 474 (1990); *State v. Ballard,* 66 Ohio St.2d 473, 423 N.E.2d 115 (1981). Rolfes, through his third proposed assignment of error, has failed to establish that he was prejudiced in any fashion through his plea of guilty.

*Rolfes*, 2016 WL 2756621.

As to Ground Three, the court found Petitioner's argument that he was prejudiced by the trial court's failure to inform him he was subject to fines or restitution was not supported by the record, *id*. at ¶ 9, because no fine or restitution was ever imposed on Petitioner at his sentencing. (Ex. 1, Doc. 6-1, at 4). The court found Petitioner was not prejudiced by this alleged error, because he could not show the outcome of his plea would have been any different. *Rolfes*, 2016 WL 2756621 at ¶ 9. It is well settled that appellate counsel has no duty to raise meritless claims on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("a petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit"). Thus, the state court's determination on this issue was not "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254.

Next, as to Ground Four, the appellate court held Petitioner's allegation that the trial court failed to accept his plea on the record was not supported by the record. As the appellate court explained, the record clearly indicated the trial court accepted Petitioner's guilty plea on the record in compliance with Crim. R. 11(C) (Doc. 6-2, at 15-27) (plea and sentencing transcript), and thus found he failed to establish he was prejudiced in any way through his guilty plea. *Rolfes*, 2016 WL 2756621 at ¶ 12. Again, counsel is not required to raise meritless claims on appeal. *See Moore*, 708 F.3d at 776. Petitioner has thus not shown the state court's finding that he could not demonstrate prejudice (that is, a reasonable probability the outcome of the appeal would have been different) to be "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254.

For these reasons, the undersigned concludes Petitioner's ineffective assistance of appellate counsel claim cannot serve as cause to excuse his default of Grounds Three and Four because he cannot show prejudice resulting therefrom. "The prejudice analysis for . . . procedural default and the prejudice analysis for the ineffective assistance of counsel argument are sufficiently similar to treat as the same in this context," *Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009); thus, "establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice." *Joseph v. Coyle*, 469 F.3d 441, 462-63 (6th Cir. 2006). Because Petitioner has not shown ineffective assistance of counsel due to failure to show prejudice, he also has not established sufficient prejudice to overcome the procedural default of Grounds Three and Four. Petitioner asserts no other cause and prejudice to excuse the default of Grounds Three and Four. Nor does Petitioner present any argument regarding "actual innocence" to overcome the default. As such, the undersigned recommends Grounds Three and Four be denied as procedurally defaulted.

Merits

*Ground One*

In Ground One, Petitioner argues the circumstances surrounding his guilty plea violated his constitutional right to due process. He offers the following supporting facts:

> The failure to advise Petitioner of all of the potential consequences of his plea as well as the maximum penalty involved and the true nature of the offense rendered the guilty plea in this case 'unknowing' and violated due process of law.
>
> &ast;&ast;&ast;
>
> During the 'Rule 11 colloquy', Petitioner was never advised of the true nature of the offense, the potential maximum penalties or all of the actual or potential consequences of his plea.
>
> The trial court failed to adhere to the strict compliance requirements of Rule 11, erroneously imposed 'post-release control' failed to advise Petitioner that he would be subject to parole and thus rendered the resultant plea involuntary as not being made 'knowingly and intelligently' as required by Due Process of Law.

(Doc. 1, at 5). Petitioner raised this claim on direct appeal to both the Eighth District Court of Appeals, and the Ohio Supreme Court. *See* Ex. 9, Doc. 6-1, at 56; Ex. 14, Doc. 6-1, at 97. Therefore, it is preserved for federal habeas review.

The requirements for a valid guilty plea are clearly established law as determined by the Supreme Court. It is well-settled that a guilty plea must be entered knowingly, intelligently, and voluntarily, without coercion, in order to be considered valid. *See Bousley v. United States,* 523 U.S. 614, 618 (1998); *Brady v. United States,* 397 U.S. 742, 747, (1970); *Boykin v. Alabama,* 395 U.S. 238 (1969); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994). The Supreme Court in *Boykin v. Alabama,* set forth the requirement that the waiver of rights by guilty plea must be clear on the record: the record must clearly disclose that the defendant voluntarily and understandingly entered his plea of guilty. 395 U.S. at 243-44.

When a petitioner challenges the validity of a guilty plea in a federal habeas proceeding, the respondent bears the duty to demonstrate that the guilty plea was entered knowingly, intelligently, and voluntarily. *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir. 1993). The respondent "generally satisfies its burden by producing a transcript of the state court proceeding." *Id.* As stated previously, "[t]he factual findings of a state court that the plea was proper generally are accorded a presumption of correctness. However, when the transcript is inadequate to show that a plea was voluntary and intelligent, the presumption of correctness no longer applies." *Id.* at 327. The court must analyze the totality of the circumstances in determining whether the plea was made knowingly, intelligently, and voluntarily. *Id.* The circumstances must show the defendant was fully aware of the consequences and there were no threats, misrepresentations, or promises that are improper. *Brady,* 397 U.S. at 755.

The Ohio appellate court described Petitioner's assignment of error, analyzed the relevant portions of the trial court's transcript, and found no prejudicial error:

{¶ 5} In his first assignment of error, appellant claims the court failed to properly advise him of his rights before accepting his pleas.

{¶ 6} Crim.R. 11 requires a court to satisfy several requirements before accepting a guilty or no contest plea in a criminal case. Relevant to the present case, Crim.R. 11(C)(2) states,

[i]n felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 7} The trial court must engage in a thorough colloquy to assure itself that a criminal defendant is entering a plea knowingly, intelligently, and voluntarily. *State v. Ballard,* 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph one of the syllabus. Part of the court's responsibility is to accurately and clearly relay information set forth in the rule to the defendant so that an informed decision can be made. The best way to ensure that pleas are entered knowingly and voluntarily is to simply follow the requirements of Crim.R. 11 when conducting a plea hearing.

{¶ 8} If a trial court fails to literally comply with Crim.R. 11, this court engages in a multitiered analysis to determine whether the trial judge failed to explain a defendant's constitutional or nonconstitutional rights because the analysis differs between the two. *State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29–30.

{¶ 9} Appellant claims the court failed to advise him of the maximum penalties involved, the statutory code sections of the charged crimes, the potential for fines, that he was not subject to early or judicial release, and he would be subject to parole and postrelease control. These alleged failings all fall under Crim.R. 11(C)(2)(a) and are nonconstitutional rights. *Clark* at ¶ 31.

{¶ 10} If the trial court imperfectly relayed information regarding non-constitutional rights, this court will then examine whether the error prejudiced the defendant. However, " '[a] complete failure to comply with the rule does not implicate an analysis of prejudice.' " *Id.* at ¶ 32, quoting *State v. Sarkozy,* 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, paragraph two of the syllabus.

{¶ 11} Here, the trial court did mention the maximum penalties, the nature of the charges, and any early release. Therefore, this court must engage in a prejudice analysis to determine whether the trial court's failure to properly inform appellant of these things rendered his pleas unknowing, unintelligent, or involuntary. The test for prejudice is "whether the plea would have otherwise been made." *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 12} When the state was explaining the plea agreement on the record, the prosecutor indicated that for the charge of aggravated murder, the penalty agreed to between the parties was a sentence of 20 years to life in prison without the possibility of early parole. (Tr. 11.) There would also be a consecutive one-year sentence for the firearm specification. The trial court stated the same terms. It advised appellant that by pleading guilty to aggravated murder, he would be subject to possible incarceration for 20 years to life, and there would be no possibility of early parole. The court similarly advised appellant of the sentence for the firearm specification. The court failed to advise appellant of the actual sentencing range for

aggravated murder, which included life imprisonment without parole or parole eligibility after 20, 25, 30 years. Former R.C. 2929.03. The sentence also carried with it the possibility of a fine up to $25,000. Former R.C. 2929.02(A).

{¶ 13} It is clear from the record that the trial court failed to inform appellant of the maximum penalties he faced prior to accepting his guilty plea to aggravated murder. However, appellant was not prejudiced by this failure. Appellant received a 21–year–to–life prison sentence, no fines were imposed, and appellant was informed that he would not be eligible for early release. The trial court imposed the sentence of which appellant was informed at the plea hearing. As the sentencing transcript indicates, there was an agreed sentence as part of the plea deal, which the court imposed. Appellant was not prejudiced by the failure to advise him of the possible range of penalties because the court informed him of all aspects of the sentence that was actually imposed.

{¶ 14} Appellant was also properly informed of the charges against him. Appellant argues that the court failed to comply with Crim.R. 11 because it failed to state the statutory code section under which he was charged. However, appellant was informed of the type and nature of that charge. For instance, the prosecutor explained that appellant was charged and would plead guilty to aggravated murder, an unclassified felony and further included the statutory definition of that charge (purposefully causing the death of Gregory Brown "while committing or attempting to commit or while fleeing immediately after committing or attempting to commit aggravated robbery.") (Tr. 11.) Therefore, appellant was not prejudiced by the alleged failure even if the court was required to state the revised code section for aggravated murder.

{¶ 15} Appellant was not prejudiced by the advisement relating to the above arguments before the court accepted his guilty plea to aggravated murder. Therefore, this assigned error is overruled.

*Rolfes*, 48 N.E.3d at 1056-57.

Here, the appellate court found the trial court failed to inform appellant of the maximum penalties he faced prior to accepting his guilty plea to aggravated murder. However, it then found Petitioner was not prejudiced by this failure because he received a 21–year–to–life prison sentence with no fines, and appellant was informed that he would not be eligible for early release. *Id*. at ¶ 12-13. In other words, the trial court imposed the exact sentence of which Petitioner was informed at the plea hearing. *Id*. at ¶ 13. Therefore, the appellate court found he was not prejudiced by accepting the plea. *Id*. This is not an unreasonable application of federal law. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (holding that "a defendant who seeks reversal of his

conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea. A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding.") (quoting *Strickland*, 466 U.S. at 694)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (habeas claims are generally subject to harmless error analysis).

Regarding Petitioner's assertion regarding the advisement of inapplicable post-release control, the appellate court found:

> {¶ 16} Appellant was advised that he would be ineligible for early parole but was also advised about postrelease control at the plea hearing. Appellant entered pleas in two cases during the change of plea hearing. Besides the aggravated murder charge in Case No. CR–04–458493, in Case No. CR–04–459857 appellant pled guilty to fifth-degree felony drug trafficking, a violation of R.C. 2925.03(A). Appellant was properly advised of the possible range of imprisonment. At the end of the colloquy, the court informed appellant that he would be subject to five years of postrelease control should he be released from prison. The court did not reference to which charge this period of control related. However, the journal entry of sentence in CR–458493 references a period of community control.
>
> {¶ 17} Postrelease control is a part of the sentence imposed for drug trafficking. R.C. 2967.28. The court improperly informed appellant that it would be up to five years. In fact, postrelease control was discretionary for up to three years for a fifth-degree felony. Former R.C. 2967.28(C).
>
> {¶ 18} Appellant argues that postrelease control was not a part of the sentence and that appellant was subject to parole, not postrelease control. However, the change of plea hearing and the sentencing dealt with two cases and the advisement regarding postrelease control came after the court referenced penalties for both charged crimes. Therefore, it can be said that the advisement about postrelease control, although incorrect in duration, was a proper part of the sentence in Case No. CR–04–459857.
>
> {¶ 19} Generally, a court does not have to inform a defendant about the possibilities or intricacies of parole for a sentence that could last for the defendant's lifetime. *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 37 ("Because parole is not certain to occur, trial courts are not required to explain it as part of the maximum possible penalty in a Crim.R. 11 colloquy."). However, when the court does convey information about parole or informs a defendant subject to parole facts regarding postrelease control, the defendant may be prejudiced by the improper information. *Id.* at ¶ 41.

{¶ 20} In *Clark,* the defendant was improperly informed of postrelease control provisions when he was subject to parole, not postrelease control. The Ohio Supreme Court recognized that the trial court did not have to inform the defendant of parole, but when it did convey information about an inapplicable period of postrelease control, the trial court erred. *Id.* at ¶ 39. That error could, in certain circumstances, result in prejudice. The *Clark* court remanded the case to the appellate court to undertake a prejudice analysis. *Id.* at ¶ 41.

{¶ 21} This court has previously applied the *Clark* decision to a case similar to the one presently before us. *State v. Rogers,* 8th Dist. Cuyahoga No. 99246, 2013-Ohio-3246, 2013 WL 3895354. In *Rogers,* the trial court improperly informed the defendant pleading guilty to murder about an inapplicable period of postrelease control. This court undertook a prejudice analysis when reviewing the trial court's decision denying a postsentence motion to withdraw a guilty plea and determined that the record did not support any. *Id.* at ¶ 36–37.

{¶ 22} Here, appellant was subject to a period of postrelease control for the felony drug trafficking charge, but the court misadvised appellant of the discretionary nature and length of that control. The court also improperly included a postrelease control sanction in the journal entry of sentence in Case No. CR–04–458493. The trial court was otherwise not obligated to inform appellant of parole. *Clark* at ¶ 37. *See also* R.C. 2929.19.

{¶ 23} The advisement during the plea colloquy did not result in prejudice. Appellant has failed to show that he would not have entered his plea in light of the significant deal offered by the state in removing the specifications that could have resulted in capital punishment, the three-year firearm specification, and dismissing other serious charges including aggravated robbery. *See State v. Anderson,* 8th Dist. Cuyahoga No. 92576, 2010-Ohio-2085, 2010 WL 1910071, ¶ 29. This case is not similar to one where a defendant asked specific questions about parole and postrelease control to which the trial court gave incorrect responses. *State v. Wolford,* 8th Dist. Cuyahoga No. 92607, 2010-Ohio-434, 2010 WL 456926. The record does not indicate appellant was under the mistaken belief that he would not be subject to parole after his possible release from prison. Appellant's second assignment of error is overruled.

*Rolfes*, 48 N.E.3d at 1058-59.

In this case, Petitioner was sentenced on two separate indictments simultaneously – one for drug trafficking (Ex. 1, Doc. 6-1, at 4), and one for aggravated murder (Ex. 5, Doc. 6-1, at 11). Only the aggravated murder conviction is at issue in this Petition. *See* Doc. 1, at 1. Here, the appellate court recognized an error with regard to the trial court's post-release control advisement on the drug charge *only*. It found Petitioner was subject to a period of post-release control for the felony drug trafficking charge, but the trial court misadvised appellant of the discretionary nature

19

and length of that control. *Rolfes*, 48 N.E.3d at ¶ 22. The trial court also improperly included a post-release control sanction in the journal entry of sentence in the aggravated murder case. *Id.*; *see also* Ex. 1, Doc. 6-1, at 4. The appellate court recognized the errors and ordered the trial court amend the journal entriy. *Id.* at ¶ 24. The trial court did so. (Ex. 17, Doc. 6-1, at 119).

Regarding Petitioner's argument he was not properly advised of parole, (Ex. 10, Doc. 6-1, at 67), the appellate court addressed the issue and held "the trial court was not obligated to inform Petitioner of parole." *Rolfes*, 48 N.E.3d at ¶ 22 (citing *State v. Clark*, 893 N.E.2d 462, 470 (Ohio 2008)). Further, the court found Petitioner was not prejudiced because, on the aggravated murder charge, parole was not certain to occur. *Id.* at ¶ 19 (citing *Clark*, 893 N.E.2d at 470) ("Because parole is not certain to occur, trial courts are not required to explain it as part of the maximum possible penalty in a Crim.R.11 colloquy."). This is not an unreasonable application of clearly established federal law. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."); *James v. Cain*, 56 F.3d 662, 666 (5th Cir.1995) ("The United States Constitution does not require the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."). Because he cannot demonstrate prejudice regarding either his parole or post-release control advisements, (that is, a reasonable probability the outcome of the appeal would have been different) to be "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law", 28 U.S.C. § 2254, the undersigned recommends Petitioner's claim with respect to Ground One be denied on the merits.

*Ground Two*

In Ground Two, Petitioner alleges he was deprived of the effective assistance of counsel in his initial direct appeal, in violation of the Sixth and Fourteenth Amendments. In support, he offers the following:

> On initial direct appeal, appointed appellate counsel, over vehement opposition and objection by Petitioner, phrased the Rule 11 violations noted in Ground I above solely as 'non-constitutional claims', thereby inviting the Court of Appeals to invoke 'harmless error analysis', despite the fact that the underlying issues are, in fact, constitutional issues thereby prohibiting harmless error analysis as strict compliance is required.

> The result of Petitioner's initial direct appeal were severely prejudices by counsel's significant and obvious error, as well as having collateral and ongoing adverse effects on Petitioner's attempts at relief.

> Counsel also overlooked additional issues regarding the failure to advise Petitioner of substantive restitution that results as a result of the plea, and the jurisdictional issues stemming from the failure to properly accept the plea, on the record, with the same prejudicial [i]ssue is exhausted fully and completely for federal review.

(Doc. 1, at 7). As discussed above, Petitioner properly raised this claim before the state courts, and thus it is preserved for federal habeas review. *See* Ex. 20, Doc. 6-1, at 144-54; Ex. 24, Doc. 6-1, at 178. Petitioner alleges counsel was ineffective for failing to raise issues regarding "selective jurisdiction review", failure to accept the plea on the record, and restitution. (Doc. 1, at 7).

Regarding Petitioner's ineffective assistance of counsel claim for failure to raise constitutional arguments about his guilty plea, the appellate court found:

> {¶ 2} In order to establish a claim of ineffective assistance of appellate counsel, Rolfes is required to establish that the performance of his appellate counsel was deficient and the deficiency resulted in prejudice. *Strickland v. Washington,* 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990).

> {¶ 3} In *Strickland,* the United States Supreme Court held that a court's scrutiny of an attorney's work must be highly deferential. The court further stated that it is all

21

too tempting for a defendant to second-guess his attorney after conviction and that it would be too easy for a court to conclude that a specific act or omission was deficient, especially when examining the matter in hindsight. Thus, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland.*

{¶ 4} Rolfes raises three proposed assignments of error in support of his application for reopening. Rolfes's first proposed assignment of error is that:

> The failure to advise a defendant during a plea colloquy of the true nature of the charge, the maximum penalty and the requirements for parole constitutes a violation of due process of law and, thus, are not subject to harmless error analysis.

{¶ 5} Rolfes argues that his plea of guilty was defective because the trial court failed to inform him of the nature of the charged offense of aggravated murder, the maximum penalties that could be imposed upon entering a plea of guilty to the offense of aggravated murder, and the possibility of parole.

{¶ 6} Rolfes's first proposed assignment of error was previously addressed upon appeal and found to be without error.

{¶ 7} Rolfes's claims that his plea of guilty was defective because the trial court failed to inform him of the nature of the charged offense of aggravated murder, the maximum penalties that could be imposed upon entering a plea of guilty to the offense of aggravated murder, and the possibility of parole, are barred from further review by the doctrine of res judicata. The issues presently raised in support of his first proposed assignment of error were previously determined to be without merit in *State v. Rolfes, supra.* Rolfes is not permitted to relitigate those issues previously addressed and found to be without merit. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, (1970); *State v. Cargo,* 93 Ohio App.3d 621, 639 N.E.2d 801 (1994); *State v. Williamson,* 8th Dist. Cuyahoga No. 102320, 2015–Ohio– 4482; *State v. Day,* 8th Dist. Cuyahoga No. 67767, 1996 Ohio App. LEXIS 44847, 1995 WL 643712 (Nov. 2, 1995). Rolfes has failed to establish any prejudice through his first proposed assignment of error.

*Rolfes*, 48 N.E.3d at 1058-59.

As described above in the analysis of cause and prejudice to overcome default, the undersigned finds Petitioner's claim in this respect is without merit as he has not satisfied either prong of *Strickland*. Under *Strickland*, Petitioner is required to show counsel's performance was deficient, and he was prejudiced by the deficient performance. *See Strickland*, 466 U.S. at 687.

Appellate counsel's performance was not deficient because they had no duty to raise meritless claims on direct appeal. *See Moore*, 708 F.3d at 776 ("a petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit"). Further, as the appellate court found, Petitioner was not prejudiced by counsel's performance because: (1) the record shows he clearly accepted the guilty plea in full compliance with Crim. R. 11(C), and (2) no restitution was imposed as part of his sentence, so he was not prejudiced by the trial court's failure to inform him he may have been subject to it. *See Rolfes*, 2016 WL 2756621, ¶ 8-12. Since Petitioner has not shown the state court's finding that he could not demonstrate prejudice (that is, a reasonable probability the outcome of the appeal would have been different) to be "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" 28 U.S.C. § 2254, the undersigned recommends Ground Two be denied on the merits.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be denied.

s/James R. Knepp, II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).